UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-60488-CIV-ALTMAN/Hunt

**VANGUARD PLASTIC SURGERY, PLLC,**
**d/b/a Vanguard Aesthetic and Plastic Surgery**,

*Plaintiff*,

v.

**UNITEDHEALTHCARE**
**INSURANCE COMPANY**,

*Defendant*.
_____/

## ORDER

The Defendant, UnitedHealthcare Insurance Company, has filed a Motion to Dismiss [ECF No. 15] (the "Motion") the Plaintiff's Amended Complaint [ECF No. 11] under FED. R. CIV. P. 12(b)(6). We referred the Motion to U.S. Magistrate Judge Patrick M. Hunt. *See* Order of Referral [ECF No. 26] at 1. Magistrate Judge Hunt issued a Report and Recommendation [ECF No. 29] (the "R&R"), in which he recommended that we **GRANT** the Motion "to the extent that Plaintiff's Count III . . . should be dismissed" and that we **DENY** the rest of the Motion, *id.* at 10. Magistrate Judge Hunt also cautioned the parties as follows:

> Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. FLA. MAG. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th CIR. R. 3-1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

*Id.* at 11. The Defendant filed timely Objections to the R&R, *see* UnitedHealthcare's Objections [ECF No. 32] ("Objections"), and Vanguard responded, *see* Response in Opposition to Defendant's

Objections [ECF No. 35] ("Response"). After careful review, we **OVERRULE** the Defendant's Objections and **ADOPT** Magistrate Judge Hunt's R&R in full.

## THE LAW

When a magistrate judge's "disposition" has been objected to, district courts must review that disposition *de novo*. FED. R. CIV. P. 72(b)(3). But, when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). In any event, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

## ANALYSIS

This case is about "the unreasonably low rate at which Defendant reimbursed Plaintiff for medical services Plaintiff provided to a patient, T.S., covered under a preferred provider health insurance policy issued, insured, operated, and/or administered by Defendant." Amended Complaint ¶ 1 (parenthetical omitted). Vanguard (our Plaintiff) was a provider in a "shared savings network," known as the Three Rivers Provider Network ("TRPN"), which "provide[s] payers (like Defendant) the right to access out-of-network providers with which payers do not have direct contacts (like Plaintiff) at a negotiated, discounted rate of reimbursement for services provided to insureds (like Patient)." *Id.* ¶¶ 36–37. Vanguard and TRPN entered into an agreement with each other, under the terms of which insurers who had *also* contracted with TRPN (like the Defendant) were "obligated to

2

make payment directly to Plaintiff at the TRPN shared savings rates"—which the agreement defined as a rate "equal to a seven percent (7%) discount of Plaintiff's billed charges for 'covered services,' less any patient responsibility amounts." *Id.* ¶¶ 39, 41.

Unfortunately for Vanguard, the Defendant "has paid Plaintiff a total of $3,129.79" on the claims Vanguard submitted to the Defendant for reimbursement relating to T.S.'s treatment—which was only 1.98% of the $158,188.50 Vanguard charged T.S. *Id.* ¶¶ 71–76. In Vanguard's view, Florida law required UnitedHealthcare to "reimburse Plaintiff for the services it provided to [T.S.] at rates equal to the shared savings rates Defendant was required to pay pursuant to the [TRPN] agreement and/or the fair market or reasonable value of Plaintiff's services." *Id.* ¶ 4. To vindicate this view, Vanguard has asserted five claims against the Defendant: two counts of breach of an implied-in-fact contract (Counts I & II), *see id.* ¶¶ 96–129; one count of unjust enrichment/breach of implied-in-law contract (Count III), *see id.* ¶¶ 130–45; one count of promissory estoppel (Count IV), *see id.* ¶¶ 146–56; and one count under FLA. STAT. §§ 627.64194(4) & 641.513(5) (Count V), *see id.* ¶¶ 157–74.

In response to the Amended Complaint, the Defendant filed a motion to dismiss under Rule 12(b)(6). In that motion, the Defendant's primary contention was that the Amended Complaint—which is entirely based on (alleged) violations of Florida law—must be dismissed because its claims are preempted by ERISA. *See* Motion at 5 ("Plaintiff's state-law theories of relief 'relate to' an employee welfare benefit plan, within the meaning of the express preemption provision of [ERISA]."). The motion also argued that "[t]he fundamental question presented by this dispute surrounds the threshold issue of whether United was *required* to 'access' [a specific rate through the Plaintiff's agreement with TRPN] in the first place. This question cuts to a core ERISA concern, *i.e.*, whether benefits are administered in accordance with the written terms and conditions of the Plan." *Id.* at 10–11 (emphasis in original). Finally, the motion claimed that some of Vanguard's individual counts were legally insufficient under state law. In brief, the Defendant averred that: (1) Counts I and II should be

3

dismissed because Vanguard "failed to allege mutual assent necessary to enforce a contract implied-in-fact," *id.* at 12; (2) Count III was insufficient because the "Plaintiff did not confer a direct benefit on United," *id.* at 15; and (3) the promissory-estoppel claim (Count IV) was improperly predicated on a promise that was "too vague to be enforceable," *id.* at 18.

Magistrate Judge Hunt mostly rejected the Defendant's arguments. *First*, the Magistrate Judge relied on another (very similar) case from our District, *Vanguard Plastic Surgery, PLLC v. United Health Group Inc.*, 2021 WL 4651504 (S.D. Fla. Sept. 21, 2021) (Singhal, J.), and concluded that "Plaintiff's state law claims were not defensively preempted by ERISA." R&R at 5. In saying so, Magistrate Judge Hunt reasoned—as Judge Singhal had in *Vanguard*—that T.S.'s insurance policy with the Defendant was effectively irrelevant because the Plaintiff "'is not seeking payment under the Plan itself,' but instead grounded its claims in 'its interactions with Defendants independent of the Plan.'" *Id.* at 5–6 (quoting *Vanguard*, 2021 WL 4651504, at *3). *Second*, Magistrate Judge Hunt found that Counts I and II were properly pled because the "Plaintiff has adequately alleged, for the purposes of a motion to dismiss, an implicit promise to pay Plaintiff at the TRPN rates." *Id.* at 8. *Third*, Magistrate Judge Hunt *agreed* with the Defendant that "the benefit conferred is not sufficient to justify Plaintiff's implied-in-law claims"—and that, as a result, Count III should be dismissed. *Id.* at 9. *Fourth*, Magistrate Judge Hunt concluded "that Plaintiff's complaint adequately alleges promissory estoppel liability" because "Plaintiff did, indeed, render services based on [the reasonable assumption that the Defendant would perform as expected]." *Id.* at 10. The Defendant has now objected to all of Magistrate Judge Hunt's recommendations—except (of course) for his conclusion that Count III should be dismissed. *See generally* Objections.[1] We'll address each of these Objections in turn.

---

[1] Since neither party objected to Magistrate Judge Hunt's analysis on Count III, we reviewed that aspect of his R&R for clear error. *See Thomas*, 474 U.S. at 150. Having found none, we now **ADOPT** this part of the R&R and **DISMISS** Count III of the Amended Complaint.

4

I.  **ERISA Preemption**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). "ERISA permits a plan participant or beneficiary to bring a civil action to recover benefits that are due under the terms of the plan or to enforce or clarify rights under the plan." *Jean Baptiste v. Securian Fin. Grp., Inc.*, 557 F. Supp. 3d 1271, 1281 (S.D. Fla. 2021) (Altman, J.) (citing 29 U.S.C. § 1132(a)(1)(B)). A major component of ERISA—designed to help effectuate its broad and comprehensive scope—is its preemption provision, which "'supersede[s] any and all State laws insofar as they may now or hereafter relate to any employment benefit plan' covered by ERISA." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) (quoting 29 U.S.C. § 1144(a)). ERISA's preemption clause "is conspicuous for its breadth" and must be "expansively applied" to conclusively preempt "all state laws that relate to ERISA covered plans." *Swerhun v. Guardian Life Ins. Co. of Am.*, 979 F.2d 195, 197 (11th Cir. 1992) (cleaned up).[2] At the same time, the Supreme Court has warned lower courts that, while ERISA's preemptive reach is broad, the term "relate to" shouldn't be taken to "the furthest stretch of its indeterminacy, or else for all practical purposes pre-emption would never run its course." *Egelhoff*, 532 U.S. at 148.

The Defendant advances two ERISA-related objections. *One*, the Defendant says that Magistrate Judge Hunt should've considered T.S.'s health-insurance policy (which United attached to

---

[2] "ERISA is one of only a few federal statutes under which two types of preemption may arise: [defensive] preemption and complete preemption." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). "[D]efensive preemption" is an affirmative defense, "which preempts any state law claim that 'relates to' an ERISA plan," whereas "complete preemption" is jurisdictional in nature and can "convert[ ] an ordinary state common law complaint into one stating a federal claim[.]" *Ibid*. Since the Defendant never claims that complete preemption applies here, we'll focus our analysis only on defensive preemption. *See* Objections at 7 ("Plaintiff's state-law claims all 'relate to' ERISA plan administration and are therefore defensively preempted."); *see also* Notice of Removal [ECF No. 1] at 2 (invoking our diversity jurisdiction under 28 U.S.C. § 1332, not our federal-question jurisdiction under § 1331).

5

its Motion to Dismiss) because the policy is essential to any understanding of the Plaintiff's allegations. *See* Objections at 5 ("[T]he very first paragraph of the Amended Complaint directly places the patient's health plan and Vanguard's challenge to the administration and payment of benefits under that health plan, at the center of this controversy."). *Two*, the Defendant insists that Judge Singhal's decision in the earlier *Vanguard* case (and, consequently, Magistrate Judge Hunt's R&R) wasn't a "correct analysis of defensive preemption." *Id.* at 9. According to the Defendant, the Supreme Court case Judge Singhal relied on—*Rutledge v. Pharmaceutical Care Management Assoc.*, 141 S. Ct. 474 (2020)—"did not involve a dispute between a provider (or even an ERISA participant or beneficiary) and an ERISA Plan or ERISA Plan administrator" and is, therefore, distinguishable from *both* Judge Singhal's case *and* ours. *Ibid.* The Defendant instead relies on several decisions of other district courts in Florida for the proposition that "very similar claims by providers are indeed defensively preempted." *Id.* at 10.

  We'll start with the first—and more straightforward—objection: Magistrate Judge Hunt rightly refused to consider T.S.'s health-insurance policy in adjudicating United's Motion to Dismiss. In general, courts shouldn't consider "matters outside the pleadings" when ruling on a motion to dismiss, unless the court converts the motion into one for summary judgment and gives the parties "a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). The one exception to this rule is the "incorporation by reference doctrine," which allows us to "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). The Defendant says that "Vanguard's entire Amended Complaint concerns Vanguard's dissatisfaction with United's administration of the Patient's healthcare claims, which were submitted to United by Vanguard as a result of the health benefit Policy covering Patient. Thus, the Policy (which is an ERISA Plan) is central to Vanguard's claim." Objections at 7. We disagree.

As Magistrate Judge Hunt explained, "the question at the heart of the complaint is whether Defendant *had contracted with TRPN to pay rates per the arrangement between Plaintiff and TRPN*." R&R at 5 (emphasis added). It's true (of course) that T.S.'s policy with the Defendant has some tangential relationship to the Plaintiff's claims, but Vanguard's Amended Complaint is also pellucid that its claims arise *only* under a *separate agreement* between the parties—an agreement formed when both Vanguard and United independently contracted with TRPN. *See* Amended Complaint ¶¶ 43–45 ("Defendant contracted with TRPN for access to TRPN's contracted providers, like Plaintiff, . . . . As part of Defendant's contract with TRPN, Defendant inured a benefit by securing discounted rates from providers, like Plaintiff. Through TRPN, Defendant contracted indirectly with Plaintiff."). Nowhere in the Amended Complaint does Vanguard even imply that the Defendant breached its policy with T.S. Indeed, in Vanguard's view, the Defendant's contractual obligation to T.S. is entirely separate from its obligations to Vanguard. *See* Response at 5 ("[T]he policy document is not 'central' to Plaintiff's claims, which are based on Plaintiff's independent interactions with Defendant, and not the terms of any health insurance policy."). Because the terms of T.S.'s policy aren't central to the Plaintiff's claims, Magistrate Judge Hunt was right to decline to consider that policy in adjudicating the Motion to Dismiss. And several courts in our District have come out the same way. *See, e.g., Vanguard*, 2021 WL 4651504, at *2 (declining to consider the terms of an alleged ERISA plan because "Plaintiff's mention of the Plan in its Complaint merely references the Patient was a member of one of Defendants' Plans"); *Orthopedic Care Specialists, P.L., v. United Healthcare Servs., Inc.*, 2021 WL 8154530, at *3 (S.D. Fla. Nov. 15, 2021) (Middlebrooks, J.) ("[T]he terms of the [patients' insurance policies] are not central to Plaintiff's claim of inappropriate rate of reimbursement. While the terms of the patients' plans may be central to *Defendants' defenses*, i.e., its argument that ERISA provides an affirmative defense to the claims raised, as further explained below, that does not render the

7

documents central to *Plaintiff's claims*." (emphasis in original)).[3] We therefore **OVERRULE** the Defendant's first ERISA objection.

Which leads us to the second of the Defendant's ERISA objections: United's view that the Amended Complaint "relates to" T.S.'s ERISA plan. Magistrate Judge Hunt concluded that, "[c]ontrary to Defendant's contention, the question at the heart of the complaint is whether Defendant had contracted with TRPN to pay rates per the arrangement between Plaintiff and TRPN." R&R at 5. T.S.'s plan, the Magistrate Judge felt, "is relevant only to the extent that it connects the patient who received care to Defendant. . . . Plaintiff here is 'not seeking payment under the Plan itself,' but is instead grounding its claims in 'its interactions with Defendant[ ] independent of the Plan.'" *Id.* at 5–6 (quoting *Vanguard*, 2021 WL 4651504, at *3). The Defendant disagrees with Magistrate Judge Hunt's interpretation of this issue and insists that the "dispute in this case is . . . whether United properly administered the Policy in processing Vanguard's claims for reimbursement for Patient's services, or whether Vanguard can insist on higher payments not consistent with the Policy/ERISA Plan terms. This cuts to a core ERISA concern, that is, whether benefits are administered in accordance with the written terms and conditions of the Plan." Objections at 13. Again, we disagree.

---

[3] In response, the Defendant provides its own list of cases where "courts have accepted and considered the ERISA plan documents on a motions [sic] to dismiss." Objections at 4–5. But these cases all concerned allegations that the defendant-insurers breached *their own policies*—not (as relevant here) that they violated the terms of some separate contractual agreement with an out-of-network provider. *See Cogswell v. Blue Cross & Blue Shield of Fla., Inc.*, 2008 WL 11411971, at *1 (S.D. Fla. Jan. 28, 2008) (Dimitrouleas, J.) ("Plaintiff alleges that the denial of benefits was a breach of the terms of the insurance contract[.]"); *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 2015 WL 12778385, at *3 (S.D. Fla. July 20, 2015) (Lenard, J.) ("The claim form G & O submitted to Defendant indicated that G & O had received an assignment of benefits from [the insured]."); *Vocational Dev. Grp., LLC v. Aetna Health, Inc.*, 2017 WL 6940562, at *2 (M.D. Fla. Sept. 6, 2017) (Honeywell, J.) ("The subscribers expressly designated Vocational as an intended beneficiary of benefits payable by Aetna 'under the terms and conditions of the healthcare plan' when they assigned their benefits to Vocational. Aetna materially breached the terms of the plan, from which Vocational has suffered damages."); *see also* Order Granting Motion to Dismiss, *Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, No. 21-62403-CIV (S.D. Fla. Feb. 9, 2022) (Dimitrouleas, J.), ECF No. 16 (dismissing state-law claims without addressing the incorporation-by-reference doctrine).

Vanguard has consistently asserted that its claims arise, not from the terms of T.S.'s insurance policy, but from the parties' respective relationships with TRPN. *See* Amended Complaint ¶ 41 ("The TRPN Agreement further provides that the insurance companies, third party administrators, health plans, and other individuals and entities with which TRPN contracts, [such as] Defendant, are obligated to make payment directly to Plaintiff at the TRPN shared savings rates."); Response at 7 ("Plaintiff's claims merely concern the rate of reimbursement for covered services, and they apply regardless of whether Patient's insurance policy is an ERISA plan or not."). It has never suggested that the Defendant is liable because it breached the terms of its policy with T.S. And (it probably goes without saying) the "mere fact" that Vanguard treated a patient who happens to have an ERISA plan *doesn't* mean that every legal issue concerning that treatment is now "related" to that plan. *See, e.g., Sarasota Cnty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, 511 F. Supp. 3d 1240, 1249 (M.D. Fla. 2021) (Merryday, J.) ("[T]he 'mere fact that a claim arises against the factual backdrop of an ERISA plan does not mean it makes reference to that plan.' . . . '[T]he fact that an ERISA plan is an initial step in the causation chain, without more, is too remote of a relationship with the covered plan to support a finding of preemption.'" (first quoting *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 235 (3d Cir. 2020); and then quoting *Morris B. Silver M.D., Inc. v. Int'l Longshore & Warehouse*, 206 Cal. Rptr. 3d 461, 472 (Cal. Ct. App. 2016))).

Still resisting, the Defendant insists that "there are many district court decisions in the Southern and Middle Districts of Florida deciding that very similar claims by providers are indeed defensively preempted." Objections at 10. Three problems with this. *One*, the Defendant ignores the many *other* decisions—a clear majority by our count—in which federal courts in our Circuit have taken the opposite view: namely, that an out-of-network provider's state-law claims against an insurer aren't preempted by ERISA if the cause of action concerns "the rate at which third-party providers are reimbursed and the way the reimbursement rate is calculated." *Fla. Emergency Physicians Kang & Assocs.,*

9

*M.D., Inc. v. United Healthcare of Fla.*, 526 F. Supp. 3d 1282, 1298 (S.D. Fla. 2021) (Dimitrouleas, J.) (citing *Rutledge*, 141 S. Ct. at 482); *see also Vanguard*, 2021 WL 4651504, at *3 ("As Defendants acknowledge, Plaintiff is an out-of-network provider and is not seeking payment under the Plan itself. Rather, Plaintiff's claims are based on its interactions with Defendants independent of the Plan, and Plaintiff brings those claims in its own right and on its own behalf, not on behalf of Patient. Accordingly, the Court finds that the state-law claims in the Complaint are not defensively preempted by ERISA."); *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d 1211, 1223 (M.D. Fla. 2020) (Conway, J.) ("In cases such as Surgery Center's, in which the Plaintiff is an out-of-network or 'non-participating' healthcare provider and not seeking payment under the [ERISA] Plan, the state law claims do not 'relate to' the ERISA plan."); *Sarasota Cnty.*, 511 F. Supp. 3d at 1247 ("Therefore, ERISA seldom defensively preempts a contracted provider's state law claim against an insurer."). And these cases (the ones Vanguard refers to) notably rely on guidance from our circuit courts—which have repeatedly refused to apply ERISA preemption to third-party health care providers (like our Plaintiff), at least where (as here) the plaintiffs' claims *don't* arise from the ERISA plans themselves. *See, e.g.*, *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994) ("Preemption in a third-party health care provider case would defeat rather than promote [ERISA's objectives]."); *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402 (3d Cir. 2004) ("The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the [ERISA] Plan that are independent of the Plan itself.").

*Two*, the Defendant is just wrong to suggest that the Supreme Court's decision in *Rutledge* "is inapposite to the claims and issues in this case[.]" Objections at 9. It's true (as the Defendant notes) that *Rutledge* "did not involve a dispute between a provider . . . and an ERISA Plan or ERISA Plan administrator." *Ibid.* In saying so, however, the Defendant misses the central holding of *Rutledge*, which is that a state law doesn't "relate to" an ERISA plan if it merely "establishes a floor for the cost of the

10

benefits that plans choose to provide"—so long as the law also "does not require plans to provide any particular benefit to any particular beneficiary in any particular way." *Rutledge*, 141 S. Ct. at 482. As Magistrate Judge Hunt correctly saw, our case is, at its core, about whether (and to what extent) state law obligates our Defendant "to use the [reimbursement] rate agreed to by Plaintiff and TRPN." R&R at 4. Our Plaintiff, in short, is *not* challenging the scope or application of the ERISA policy's benefits *at all*. *See* Amended Complaint ¶ 9 ("Defendant is obligated to pay Plaintiff the TRPN shared savings programs rates for Plaintiff's services, as agreed to by Defendant, through its contractor and/or agent, TRPN[.]"); Response at 2 ("Plaintiff is not seeking payment under any ERISA plan itself, but rather bases its claims on its independent interactions with Defendant."). And the Plaintiff never suggests that the state laws in question in any way "require plans to provide any particular benefit to any particular beneficiary in any particular way." *Rutledge*, 141 S. Ct. at 482. *Rutledge* is thus plainly relevant on our facts. *Cf. Fla. Emergency Physicians*, 526 F. Supp. 3d at 1298 ("The Florida Deceptive and Unfair Trade Practices Act, Florida Statute § 641.513 and § 627.64194, as well as the common law causes of action under which Plaintiffs bring their state law claims all have force and operate independently of the existence of any ERISA plans. Accordingly, Plaintiffs' state law claims do not 'relate to' ERISA by referencing the statute or ERISA plans in any way.").

*Three*, the Defendant's cases are just very different from ours. As one judge on our Court found in *South Broward Hospital District v. ELAP Services, LLC*, three of the Defendant's cases—*Alcalde v. Blue Cross & Blue Shield of Florida, Inc.*, 62 F. Supp. 3d 1360 (S.D. Fla. 2014) (Ungaro, J.), *Columna, Inc. v. UnitedHealthcare Insurance Co.*, 2019 WL 2076796 (S.D. Fla. Apr. 29, 2019) (Dimitrouleas, J.), and *FFP, LLC v. UnitedHealthcare Insurance Co.*, 2018 WL 11152202 (S.D. Fla. June 6, 2018) (Ungaro, J.)—are "not [ ] analogous" to our situation because "the claims [in those three cases] sought specifically to enforce the terms of ERISA plans," 2020 WL 7074645, at *10 (S.D. Fla. Dec. 3, 2020) (Singhal, J.). And other judges have rejected the Defendant's remaining cases—*Apex Toxicology, LLC v. United*

11

*Healthcare Insurance Co.*, 2017 WL 7806152 (S.D. Fla. June 26, 2017) (O'Sullivan, Mag. J.), and *Lab Physicians, P.A. v. AvMed, Inc.*, 2008 WL 11335171 (M.D. Fla. Oct. 17, 2008) (Lazzara, J.)—on the ground that "each involved a dispute where a claim for benefits was denied or terminated in its entirety, rather than a situation where a claim was approved, and only the amount paid was at issue," *Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, 2020 WL 7389987, at *8 n.10 (M.D. Fla. June 1, 2020) (Hoffman, Mag. J.), *report and recommendations adopted*, 2020 WL 7389447 (M.D. Fla. June 16, 2020) (Byron, J.); *see also Neurosurgical Consultants of S. Fla., LLC v. Cigna Health & Life Ins. Co.*, 2021 WL 1238386, at *3 (S.D. Fla. Mar. 3, 2021) (Singhal, J.) ("But [*Surgery Center of Viera, LLC v. Cigna Health & Life Ins. Co.*, 2020 WL 4227428 (M.D. Fla. July 23, 2020) (Dalton, J.)] is distinguishable. . . . [H]ere, the parties do not agree that any alleged plan is subject to ERISA.").

Magistrate Judge Hunt therefore found that ERISA didn't preempt Vanguard's state-law claims (*see* R&R at 5–6)—and we agree. We thus **OVERRULE** the Defendant's ERISA Objections and **ADOPT** Magistrate Judge Hunt's recommendation that ERISA doesn't preempt Vanguard's state-law claims.

## II.     Implied-in-Fact Contract

The Defendant next objects to Magistrate Judge Hunt's refusal to dismiss Counts I and II of *on the merits*. In the Magistrate Judge's view, the Plaintiff "has adequately alleged, for the purposes of a motion to dismiss, an implicit promise to pay Plaintiff at the TRPN rates." R&R at 8. According to the Magistrate Judge, Vanguard plausibly alleged that the parties had entered into an implied-in-fact contract because "the Defendant issued a member identification card indicating that it recognized shared savings networks such as TRPN, preauthorized services with Plaintiff, and ultimately paid Plaintiff for those services, though not at the rate Plaintiff expected." *Ibid.* Trying to parry, the Defendant contends that "[t]he pre-authorizations do not reflect any objective manifestation of assent on the subject of price, thus there is no meeting of the minds." Objections at 17.

12

Under Florida law, a breach-of-contract claim has three elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). A contractual obligation between two parties "need not be pursuant to an express provision in a written contract, but may either be an express or implied contractual obligation." *Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126, 1129 (Fla. 1st DCA 1997) (cleaned up). "A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Commerce P'Ship 8098 Ltd. P'Ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997) (en banc); *see also Rabon*, 693 So. 2d at 1131 ("In a contract implied in fact the assent of the parties is derived from other circumstances, including their course of dealing or usage of trade or course of performance." (citing RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. b (1982))). "To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to a certain and definite proposition and left no essential terms open." *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999) (cleaned up). Notably, whether there has been a "meeting of the minds" is a question of fact. *See Graf v. Liberty Mut. Ins. Co.*, 636 So. 2d 539, 542 (Fla. 5th DCA 1994) (reversing summary judgment for the defendant because "it [was] not clear that there was a meeting of the minds in reaching the alleged agreement"); *see also Fla. Emergency Physicians*, 526 F. Supp. 3d at 1302 ("The Court finds that disagreements as to whether the Parties' conduct gives rise to an implied in fact contract would best be evaluated on a more complete record at a later stage in the litigation. At present, Plaintiffs have alleged sufficient facts to survive the United Defendants' Motion to Dismiss.").

We agree (again) with Magistrate Judge Hunt that Vanguard has plausibly alleged the existence of an implied-in-fact contract with the Defendant. As the R&R notes, the Amended Complaint asserts that: (1) "Plaintiff was a provider in the TRPN shared savings network"; (2) "Defendant was a TRPN

13

Client"; (3) "Defendant knew or should have known that Plaintiff was a contracted provider with TRPN"; (4) "[the Defendant] issued a member ID card to Patient representing that Defendant recognizes shared savings networks, like TRPN, for services provided to Patient"; and (5) "[the Defendant] preauthorized Plaintiff's provision of services to Patient[,] . . . approved of Plaintiff providing medical services to Patient[,] . . . [and] affirmatively accessed the TRPN shared savings rates[.]" Amended Complaint ¶¶ 97, 102, 105. These detailed factual allegations—which we must accept as true at this stage of the case—suggest that the parties mutually assented to a contract in which the Plaintiff would provide medical services to T.S. and the Defendant would reimburse the Plaintiff at the shared savings rate outlined in the TRPN agreement. *See* R&R at 8 ("Plaintiff has adequately alleged that Defendant understood the nature of Plaintiff's business and the expectations of shared service networks, and indicated via its membership identification cards that it agreed to these terms.").

The Defendant's principal case—*RMP Enterprises, LLC v. Connecticut General Life Insurance Co.*, 2018 WL 6110998, at *8 (S.D. Fla. Nov. 21, 2018) (Rosenberg, J.)—doesn't alter this result because our Defendant (at least according to the Amended Complaint) did much more than "orally verify" coverage. In *RMP Enterprises*, Judge Rosenberg found that "Cigna's alleged oral verification of coverage is [standing alone] insufficient to form the basis of any agreement to pay—whether implied or express," and she added that the plaintiff there had "fail[ed] to allege any [other] 'conduct' that might give rise to an implied contract." *Ibid.*; *see also, e.g., Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 2020 WL 3547047, at *8 (S.D. Fla. June 30, 2020) (Rosenberg, J.) ("Chiron has alleged that routine course of dealing and routine coverage verification formed a contract, but this is a proposition solidly rejected by courts throughout the country[.]"). Here, by contrast, Vanguard has alleged that the Defendant gave much more than its tacit (oral) consent. So, for instance, the Amended Complaint avers that the Defendant issued T.S. an ID card, "representing that Defendant recognized shared

14

savings networks, like TRPN," and it makes clear *both* that the Defendant "acknowledged its approval of Plaintiff's performing medical services . . . via [its] use of the CO45 claims adjustment code and related marks on the remittance notices it issued to Plaintiff," *and* that the Defendant was "paying for services provided to Patient at the applicable TRPN shared savings rates." Amended Complaint ¶¶ 105–06. In any event—and especially given these added details about the Defendant's assent—we agree with Magistrate Judge Hunt's observation that "whether an implied-in-fact contract has been formed can be a fact-intensive inquiry better resolved after discovery." R&R at 7 (citing *Rosner v. United States*, 231 F. Supp. 2d 1202, 1217 (S.D. Fla. 2002) (Seitz, J.)).

Again, then, we **OVERRULE** the Defendant's Objection and **ADOPT** Magistrate Judge Hunt's recommendations as to the implied-in-fact claims (Counts I and II).

### III.   Promissory Estoppel

The Defendant's final objection concerns Vanguard's "promissory estoppel" claim (Count IV). As to this claim, Magistrate Judge Hunt wrote:

> Plaintiff alleges that Defendant via its identification cards acknowledged its recognition of shared savings networks. Defendant should expect that such acknowledgment would induce in Plaintiff the reasonable assumption that Defendant would perform as expected under the terms of such networks. Plaintiff did, indeed, render services based on that expectation. Accordingly, Plaintiff alleges Defendant acknowledged such services and their terms, allowed Plaintiff to act with the expectation that the terms of such services would be fulfilled, and then failed to live up to its promise.

R&R at 10. As the Defendant sees things, however, "it is unreasonable to assume that TRPN rates must be accepted simply because the Patient's ID card acknowledged a different savings program." Objections at 19. In any event, the Defendant says, "[t]he purported promise is far too vague to be enforceable." *Ibid.* Again, we disagree—at least for now.

Promissory estoppel is "the principle that a promise without consideration may nonetheless be enforced to prevent injustice"; the doctrine thus traditionally applies "as an exception to the requirement of consideration in the formation of a contract." *DK Arena, Inc. v. EB Acquisitions I, LLC*,

112 So. 3d 85, 93 (Fla. 2013) (quoting BLACK'S LAW DICTIONARY 631 (9th ed. 2009)). "To state a cause of action for promissory estoppel, the plaintiff must establish the following three elements: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. 2d DCA 2005). "By its very nature, promissory estoppel does not turn on mutual assent to be bound in the same way as a contract claim. Rather, the essence of promissory estoppel is detrimental reliance." *Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cnty.*, 488 F. Supp. 2d 1231, 1237 (S.D. Fla. 2007) (Seitz, J.) (citing *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)).

We think Magistrate Judge Hunt got it right when he said that the Defendant's recognition of shared savings networks—including TRPN—"allowed Plaintiff to act with the expectation that the terms of such services would be fulfilled, and then failed to live up to its promise." R&R at 10. In saying so, we remind the Defendant that, when adjudicating a motion to dismiss, we "must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). We've already found that the Amended Complaint plausibly alleges a contractual relationship between the parties. *See generally* Amended Complaint ¶¶ 145–56. While the Defendant insists that "[t]hese allegations hardly amount to a clear and definite promise to pay Plaintiff any money," Objections at 20, this contention is simply premature on a motion to dismiss—and (again) other judges in our District agree. *See Vanguard*, 2021 WL 4651504, at *4 ("Taking the well-pled factual allegations as true, the Court finds that Plaintiff has stated a plausible claim for promissory estoppel. Specifically, Plaintiff alleges Defendants' confirmation and identification cards indicated the services rendered and Defendants would be responsible to pay the claims."); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385

F. Supp. 3d 1289, 1294 (S.D. Fla. 2019) (Ungaro, J.) (finding a promissory-estoppel claim facially sufficient where "[p]laintiffs allege[d] that Medica provided its members with identification cards for the purpose of presenting them to providers in order to receive medical services and that the Hospitals contacted Medica to confirm coverage. The Hospitals provided medical services in reliance on Medica's confirmations and cards. Thus, [p]laintiffs have stated a plausible claim for promissory estoppel.").

Again, therefore, we **OVERRULE** the Defendant's Objections and **ADOPT** the R&R's recommendation as to Count IV.

*  *  *

Having conducted a *de novo* review of the R&R, the record, and the applicable law, we hereby **ORDER AND ADJUDGE** as follows:

1. The R&R [ECF No. 29] is **ACCEPTED and ADOPTED** in full. The Defendant's Objections [ECF No. 32] are **OVERRULED**.

2. The Defendant's Motion to Dismiss [ECF No. 15] is **GRANTED in PART** and **DENIED in PART**.

3. Count III of the Amended Complaint [ECF No. 11] is **DISMISSED with prejudice**.

4. The Defendant shall file an Answer to the Amended Complaint within **fourteen (14) days** of this Order. *See* FED. R CIV. P. 12(a)(4).

**DONE AND ORDERED** in the Southern District of Florida on February 27, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record